H. Lewis Brown, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 87744.   Promulgated September 28, 1939.

*H. Lewis Brown, Esq.*, pro se.
*Frank M. Thompson, Esq.*, for the respondent.

OPINION.

MELLOTT: Petitioner contends that respondent erred in including the $20,900 in his gross income. He argues that the assignment of his interest in the claim of the partnership for stock in the Eastern Chemical Corporation constituted a nontaxable exchange under section 112 (b) (5) of the Revenue Act of 1932. Hence, he says, no taxable gain is to be attributed to him from the exchange. The

respondent contends, and we think correctly, that there is no reason to discuss the applicability of this section; for he did not determine the deficiency in tax upon the theory, nor does he now urge, that the exchange gave rise to taxable gain. He merely determined that the amount, "representing a fee for personal service, which was transferred to Eastern Chemical Corporation, is income to you who earned it." In making this determination he relied upon the rule enunciated and applied by the courts in such cases as *Lucas* v. *Earl*, 281 U. S. 111; *Van Meter* v. *Commissioner*, 61 Fed. (2d) 817; *Harry A. Daugherty*, 24 B. T. A. 531; affd., 63 Fed. (2d) 77, and others. If the rule of the cited cases is applicable, the deficiency should be upheld; otherwise it should be set aside. The issue, therefore, may be resolved by determining whether or not such rule is applicable.

*Lucas* v. *Earl*, *supra*, applies literally the section of the revenue act imposing a tax upon the net income of every individual, including "income derived from salaries, wages or compensation for personal service * * * of whatever kind and in whatever form paid." (Cf. sec. 22, Revenue Act of 1932.) It holds that the import of the act is to tax income to those who earn it and to prevent the escaping of the tax "by anticipatory arrangements and contracts however skillfully devised to prevent the salary when paid from vesting even for a second in the man who earns it."

*Van Meter* v. *Commissioner*, *supra*, follows the *Earl* case and holds that the "earner" of income—"the one whose personal efforts have produced it"—is taxable upon such income. Two other situations in the same category are income from owned property (*Corliss* v. *Bowers*, 281 U. S. 376) and income derived from combined personal effort and property (*Burnet* v. *Leininger*, 285 U. S. 136).

*Harry A. Daugherty*, *supra*, applied the same general rule, holding that an assignment by a husband to his wife of an undivided one-half interest in a contract of employment "effected merely an equitable assignment of petitioner's possible future income" and that the amount received was taxable income to the assignor.

It would serve no useful purpose to list and discuss the various cases applying the principles of the above cases. Suffice it to state that they hold, as succinctly stated by the Court of Appeals for the Fifth Circuit, that "No device or arrangement, be it ever so shrewdly and cunningly contrived, can make future earnings taxable to any but the earner of them, can make future income from property taxable to any but the owner of the right or title from which the income springs." *Saenger* v. *Commissioner*, 59 Fed. (2d) 631. Cf. *Wallace Groves*, 36 B. T. A. 14; affd., 99 Fed. (2d) 179; *Gerald A. Eubank*, 39 B. T. A. 583.

But, says petitioner, the facts in the instant proceeding bring the income in question within the rule of such cases as *Hall* v. *Burnet*, 54 Fed. (2d) 443; *Helvering* v. *Seatree*, 72 Fed. (2d) 67; *Shanley* v. *Bowers*, 81 Fed. (2d) 13; and *Matchette* v. *Helvering*, 81 Fed. (2d) 73. Other cases to the same general effect are *J. V. Leydig*, 15 B. T. A. 124; affd., 43 Fed. (2d) 494; *Nelson* v. *Ferguson*, 56 Fed. (2d) 121; certiorari denied, 286 U. S. 565; *Commissioner* v. *Ross*, 83 Fed. (2d) 18; *Julius E. Lilienfeld*, 35 B. T. A. 391; *Louis Boehm*, 35 B. T. A. 1106; *Fontaine Fox*, 37 B. T. A. 271; and *Blair* v. *Helvering*, 300 U. S. 5. These cases stand for the general principle that property, which in and of itself is a producer of income, together with any income theretofore produced by it but not yet reduced to possession by the owner, may be assigned without subjecting the assignor to the income tax upon the income ultimately collected by the assignee. Petitioner recognizes the scope of the above decisions and argues that the income in question is not taxable to him because, as he expresses it, "the thing assigned was not income but was a capital asset, itself a producer of income."

Petitioner cites New York cases—*Gilbert* v. *Ackerman*, 159 N. Y. 118; 53 N. E. 753; *In re Delaney*, 256 N. Y. 315; 176 N. E. 407—and statements by textbook writers to the effect that a chose in action, a right to recover money or property under a contract, and similar rights, constitute property and are assignable. But we are of the opinion that the answer to our question is not to be found in generalities. We are not concerned with the question whether petitioner did or did not have an assignable right in the claim for compensation. The question, as correctly stated by the petitioner, is whether the thing which was assigned was itself a "producer of income" or whether what was assigned was the income itself. In determining this question the transaction should be examined in the light of the revenue acts rather than by merely determining whether or not the assignment is considered to be a property right under the laws of the state.

Section 182 (a) of the Revenue Act of 1932 provides that there shall be included, in computing the net income of each partner, "his distributive share, whether distributed or not, of the net income of the partnership for the taxable year * * *." The partnership of Burroughs & Brown, though dissolved by the death of Burroughs in June of 1929, had an income of $41,800 in 1933. If there had been no assignment by petitioner of his right to receive his aliquot portion of such income, he would probably not deny that it was taxable to him as "net income of the partnership", or as his share of partnership earnings. At first blush it may seem to be somewhat anomalous

that a partnership may have income notwithstanding the fact that it has been dissolved by the death of a partner; but "the winding up of the business of the firm is the precise result which is contemplated by the [partnership] agreement." *Williams* v. *Whedon*, 109 N. Y. 333; 16 N. E. 365. As pointed out by the Court of Appeals for the Second Circuit in *Rossmoore* v. *Commissioner*, 76 Fed. (2d) 520, "on dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed." Thus, when petitioner instituted and carried on the suit in the Supreme and Appellate Courts of New York in his capacity of surviving partner, he was, as the partnership agreement contemplated, attempting to recover the income which the partnership had earned. The dissolution of the partnership by the death of Burroughs did not have the effect of vesting a one-half interest in all of the partnership property in his executors and a like interest in petitioner. Their rights were fixed by the partnership agreement; and even "the representatives of the deceased partner have no legal interest in [the firm] assets and no legal right to interfere in their administration, so long as the survivor is prosecuting the business of closing up the estate and applying its proceeds in the payment of firm debts." *Williams* v. *Whedon*, *supra*. In other words, it could not be ascertained whether the partnership would, or would not, have anything to distribute until its various claims were collected and its debts paid. This of necessity was dependent upon the outcome of the litigation which was being carried on by the surviving partner.

Petitioner's argument, that the services had been rendered prior to the taxable year and that therefore the income resulted from the "property" which had been transferred, is not convincing. The income resulted from the performance of legal services by the partnership. Petitioner did not attempt to assign anything but his "undivided one-half interest in and to a certain claim of Burroughs & Brown." The evidence does not show that Davis or the trust company ever had any notice of the assignment nor does it disclose that the assignee ever took any part either in carrying on the litigation or in making settlement of it. The litigation was carried on by the surviving partner for the benefit of the partnership and it received the fee. The fact that petitioner chose to recognize the assignment which he had made to his wholly owned corporation and to turn the check over to it is immaterial. The income was the income of the partnership in the year it was received. The only alternative to this conclusion, which seems to suggest itself, is, that the partnership realized income in an earlier year; but petitioner does not argue that any such conclusion should be reached, for in that event the income to

the partnership would antedate the assignment and be taxable to him.

*Burnet* v. *Leininger, supra,* and *Rossmoore* v. *Commissioner, supra,* seem to justify including the amount in controversy in petitioner's income for 1933. Here, as in the *Leininger* case, "that which produced the income was not [the assignor's] * * * individual interest in the firm, but the firm enterprise itself. * * * There was no transfer of the corpus of the partnership property to a new firm with a consequent readjustment of rights in that property and management." The assignee may have become the beneficial owner of one-half of the income which the assignor received from the firm enterprise, but "it is still true that * * * [the assignor] and not * * * [the assignee] was the member of the firm and that * * * [the assignee] had only a derivative interest." As pointed out in the *Rossmoore* case, the theory that a partner's interest is "like that of a shareholder in a company * * *—a right against the 'firm entity' and assignable as such" is incompatible with the whole idea of partnerships under the revenue acts; for they "have consistently retained the common-law view, treating all income of the firm as taxable to the partners, whether distributed or not, and ignoring the firm as a taxpayer except for purposes of information."

Petitioner's contention that "the thing assigned was a producer of income" is not sustained merely by a showing that the assignee received the amount from the assignor after he had collected it. The activities of the partnership produced the income and the thing assigned "produced" nothing.

Petitioner's contention, that the firm, prior to the assignment, had done everything necessary to make the fee payable and hence that the income had been completely "earned" before the assignment, is materially weakened, if not entirely negatived, by the showing that it was necessary to carry litigation to enforce its collection to a successful conclusion before the amount was payable. If the firm had abandoned all efforts to enforce collection, the present controversy would probably never have arisen; for in that event it is quite likely that the fee would not have been collected by anyone.

We are of the opinion and hold that the respondent did not err in including the amount in controversy in petitioner's gross income for the year 1933.

Reviewed by the Board.

*Judgment will be entered for the respondent.*